# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MEGHAN C.,**
**Respondent Below, Petitioner**

**FILED**
**March 6, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-114** (Fam. Ct. Cabell Cnty. No. 18-D-121)

**JAMES C.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Meghan C.[1] appeals the Family Court of Cabell County's Final Order entered on August 23, 2022. In the Final Order, the family court designated James C. as the primary residential parent of the parties' minor child and granted James C. the majority of parenting time with the minor child during the school year. James C. timely filed a summary response in support of the family court's order. Meghan C.[2] did not file a reply brief.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no abuse of discretion. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21(c) of the Rules of Appellate Procedure.

James C. and Meghan C. were married on June 18, 2016, in Cabell County, West Virginia. The parties have one child, W.C., born during the marriage. The parties separated from each other on October 5, 2017. Following the separation, Meghan C. and W.C. eventually moved to Tennessee. James C. remained in Cabell County.

On March 1, 2018, James C. filed his petition for divorce in Cabell County. By Final Order entered on December 21, 2018, the parties were divorced from one another and

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Meghan C. is represented by Noel M. Olivero, Esq. James C. is represented by Jennifer Ransbottom, Esq. The child's guardian ad litem, Ryan Turner, Esq., filed a brief response indicating that he was relieved of his appointed role prior to the relevant hearings in this case.

1

granted equal parenting time of W.C. until W.C. attained pre-school age, at which time the parties were ordered to either reach an agreement or file a petition for modification of the December 21, 2018, Final Divorce Order. While the family court ordered equal parenting time, Meghan C. was designated as the primary residential/custodial parent. The parties exercised equal parenting time by each having the child for alternating two-week periods.

On May 5, 2021, as W.C. was set to begin pre-kindergarten the upcoming fall, Meghan C. filed a petition for modification of the parenting plan. Meghan C. sought to have W.C. attend pre-kindergarten in Tennessee and for Meghan C. to be granted the majority of parenting time with W.C. during the school year. James C. filed a response and proposed that the parties home-school W.C. for pre-kindergarten so that the parties could continue their equal parenting time arrangement; provided, however, that if W.C. would attend pre-kindergarten, that the education be provided in West Virginia while the child resided with him.

The family court held hearings on the petition for modification on July 8, 2021, August 16, 2021, February 15, 2022, and April 13, 2022. Following the hearings, on July 20, 2022, the family court entered a two-page Decision that did not contain findings of fact or conclusions of law. The decision held that James C. would be the primary residential parent during the school year. The family court directed James C.'s counsel to prepare an order regarding the decision.

On August 23, 2022, the family court entered a detailed final order outlining the reasoning that supported the July 20, 2022, Decision. The final order details the testimony of the witnesses and the positions of the parties before concluding that, although it was a close call, it was in the best interests of W.C. for James C. to be the primary residential parent during the school year. The family court supported this conclusion by finding that James C. was the parent better suited to encourage a positive relationship between W.C. and her other parent and that W.C. would spend less time in the care of third parties since James C. was going to be a stay-at-home dad.[3]  To support its conclusion that James C.

---

[3] The family court also noted that it "applied the law in existence at that time, and did not consider any of the new modifications that were enacted after the hearing." The family court appears to be referring to the enactment of the presumption of 50/50 custody that became effective on June 10, 2022, prior to the entry of the Decision and Final Order in this matter. In *Amanda C. v. Christopher P.*, No. 22-IA-2, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17098574, at *5 (Ct. App. Nov. 18, 2022), we held that the Legislature specifically intended for the 2022 amendments to the law of custodial allocation "to be applied to cases pending consideration—those not yet reduced to a final order." However, unlike in *Amanda C.*, it is clear from the record that a 50/50 custodial allocation would be impractical in this case due to the parties living in different states and W.C. starting kindergarten. *See* W. Va. Code § 48-9-209(f)(5)(A) & (D) (2022) (requiring family courts to consider whether 50/50 allocation is impractical because of physical distance between

was the parent better suited to encourage a positive relationship between W.C. and her other parent, the family court found:

> (1)     Both parties testified they always discussed medical appointments. The pediatrician referred [W.C.] to a therapist. [Meghan C.] didn't tell [James C.]. [Meghan C.] took [W.C.] to the therapist 3 times without telling [James C.], even advising [James C.] of the recommendations but failing to tell where they came from. She also failed to follow up after the 3rd visit.
> (2)     [Meghan C.] signed [W.C.] up for weeball without discussing first with [James C.]. Even though she'd signed her up 3 weeks prior, she told him the day of practice so in case he wanted to help buy equipment.
> (3)     The above interfered with [James C.]'s ability to exercise shared authority.
> (4)     [Meghan C.] would monitor [James C.]'s phone calls and turn the call away if his wife was present, until the therapist advised her this was okay.
> (5)     [Meghan C.] advised the therapist she did not recall the Court's prior order where [W.C.] was to be in a room by herself during the phone calls and continued to be in the same room during calls.
> (6)     The above interfered with [James C.]'s parenting time.

Meghan C. appeals the August 23, 2022, Final Order to this Court. We are guided by the following standard of review:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, No. 22-IA-2, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17098574, at *3 (Ct. App. Nov. 18, 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

On appeal, Meghan C. first asserts that the family court erred by issuing its July 20, 2022, Decision without first making findings of fact and conclusions of law. Essentially, Meghan C. argues that the family court erred by making its decision first and then adopting findings of fact and conclusions of law. We disagree. The July 20, 2022, Decision was a

---

parents and whether 50/50 allocation would disrupt the education of the child). Since neither party sought 50/50 below, neither party raised the issue on appeal, and 50/50 would not appear practicable under the facts of this case, the Court declines to apply the plain error doctrine to this error by the family court.

preliminary ruling that contemplated a further final order of the court. Such further final order, which contained findings of fact and conclusions of law, was entered August 23, 2022. While the ultimate disposition of this matter was not in Meghan C.'s favor, Meghan C. does not explain how she was prejudiced by the issuance of the Decision prior to entry of the final order. Stated another way, if the family court would have issued a final order with findings of fact and conclusions of law instead of the Decision followed by the final order, Meghan C. would be in the same position. Further, the family court's decision to notify the parties of the ultimate disposition on July 20, 2022, prior to entry of the detailed final order, was pragmatic given that W.C. was set to begin kindergarten in the fall of 2022. Accordingly, the family court did not abuse its discretion when it issued the July 20, 2022, Decision prior to the entry of the final order.

Meghan C.'s second assignment of error alleges that the family court erroneously found that Meghan C. moved to Tennessee shortly after the petition for divorce was filed. Meghan C. argues that such a finding implies that she acted maliciously by moving and that she created the parties' long distance parenting issues. While it is true that the family court's finding in this regard appears to be erroneous, there is nothing in the family court's order that indicates or implies that Meghan C. acted maliciously by moving to Tennessee and it does not appear that the family court relied on the finding in reaching its ultimate conclusion. Accordingly, while the family court's finding in this regard was erroneous, the error was harmless because the finding was not relevant to the family court's ultimate decision.

Meghan C.'s third assignment of error alleges that the family court abused its discretion by finding that Meghan C. persistently violated or interfered with James C.'s parenting time. In this assignment of error, Meghan C. disputes the factual findings that support the family court's conclusion that James C. is the better parent to foster a positive relationship between W.C. and her other parent. Specifically, Meghan C. disputes the findings of the family court relating to therapy, wee ball, and interfering with video calls.

In regard to enrolling W.C. in therapy, Meghan C. argues that the even though it is undisputed that she did not discuss enrolling W.C. in therapy with James C. prior to doing so, the family court erred in "holding the issue against" her because the guardian ad litem testified that this wasn't a significant issue. We disagree. While the family court should consider the opinions of the parties and the guardian ad litem, it is the family court that has the ultimate power of disposition and must exercise its independent judgment. *See State ex rel. Jeanne U. v. Canady*, 210 W. Va. 88, 97, 554 S.E.2d 121, 130 (2001). Given that the final divorce order required the parties to share all major decision-making and inform each other of all medical appointments promptly, we cannot say that the family court erred in considering this an issue or in making its finding that Meghan C. interfered with James C.'s parenting by failing to discuss the enrollment of W.C. in therapy prior to doing so and failing to promptly inform him of her therapy appointments.

4

In regard to wee ball, Meghan C. asserts that there was evidence below that she sent James C. an email regarding the details of W.C. participating in wee ball. However, Meghan C. does not point to any evidence in the record that contradicts the finding by the family court that she signed W.C. up for wee ball without *first* discussing the decision with James C. Accordingly, the family court did not err in so finding.

In regard to interfering with video calls, Meghan C. asserts that the family court's final order ignores the mutual agreement between Meghan C. and James C. to limit video call participation to only W.C. and her parents. To the contrary, the family court's final order notes that on cross-examination during the July 8, 2021, hearing, Meghan C. admitted that James C. agreed to limit who participated in video calls with W.C. only after Meghan C. stated that James C.'s wife could not participate in the calls. Further, there was testimony during the April 13, 2022, hearing from James C. that Meghan C. was not allowing W.C. to have nightly video calls with him in a private area as ordered by the family court. Meghan C. further asserts that the conduct of the family court precluded her from presenting certain evidence regarding the videocalls. However, the statements relied on by Meghan C. are best described as attempts by the family court to move the hearings along after it had heard considerable evidence and argument related to the video calls. Meghan C. cites no authority for her position that such statements by the family court preclude the family court from considering the evidence before it. Accordingly, the finding by the family court that Meghan C. interfered with James C.'s video calls with W.C. is supported by the record and not clearly wrong.

Meghan C. also asserts that the family court abused its discretion by finding that it did not need to give any consideration to the prior agreement of the parties. We disagree. It appears from the record that this issue was litigated during the final divorce proceedings which culminated in the entry of the December 21, 2018, final divorce order. That order was appealed by Meghan C. based, in part, on the family court failing to consider the prior agreement of the parties. By order entered on March 14, 2019, the Circuit Court of Cabell County affirmed the December 21, 2018, final divorce order of the family court on the merits. The circuit court's order was not appealed. The law of the case doctrine generally prohibits successive litigation of issues that have been previously decided in a prior decision and appeal. *See Hatfield v. Painter*, 222 W. Va. 622, 632, 671 S.E.2d 453, 463 (2008). Accordingly, the family court did not abuse its discretion by finding that it did not need to consider the prior agreement of the parties when the issue had previously been decided by the family court and the family court's decision on this issue was affirmed on the merits on appeal.

Meghan C.'s remaining assignments of error assert that the family court abused its discretion by failing to properly consider or afford proper weight to certain evidence.[4] "An

---

[4] It appears from Meghan C.'s brief that her remaining assignments of error present a single issue and therefore her assignments of error have been consolidated. *See*

appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact." *In re the Marriage/Child. of Matt N. v. Michele I.*, No. 14-0090, 2014 WL 6724758, at *5 (W. Va. Nov. 25, 2014) (memorandum decision) (citing *State v. Guthrie,* 194 W.Va. 657, 669 n. 9, 461 S.E.2d 163, 175 n.9 (1995)). Here, the family court reviewed the information presented to it over the course of four lengthy hearings and determined which evidence was salient to the issues being considered and the weight such evidence should be afforded. Though Meghan C. disagrees with the family court's interpretation of certain evidence, resolution of conflicting evidence, and the inferences drawn therefrom, after a review of the record we cannot conclude that the family court's findings were clearly wrong or the application of the facts to the law was an abuse of discretion.

Accordingly, we affirm the family court's August 23, 2022, Final Order.

Affirmed.

**ISSUED:** March 6, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

---

*generally Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").